hLANDRIEU, Judge.
In this child custody case, the district court granted the father’s rule to change custody on October 24, 1997. The district court on April 17, 1998, denied the mother’s motion to annul that judgment. For the reasons set forth below, we affirm the district court’s ruling of April 17,1998.[1]
The mother was originally awarded legal custody of the three minor children on July 28, 1992. The father, however, had physical custody of the children in New Orleans from July of 1995 until Easter of 1997, when the mother took the children to live with her and her new husband in North Carolina. The father filed a rule to change custody on June 26, 1997, alleging the whereabouts of the mother and children were unknown to him. The district court appointed an attorney to represent the absent mother; the attorney was then served with the rule to change custody. The mother’s appointed representative placed classified advertisements in newspapers in New Orleans and Greensboro, North Carolina, for three days inj^August of 1997. After taking evidence, including testimony on the efforts to locate the mother, the court, on October 24, 1997, awarded permanent and sole custody of the three children to the father. The father executed the judgment in North Carolina and returned the children to New Orleans in March of 1998.
On April 13, 1998, the mother moved the district court to annul the judgment on the rule to change custody. The motion was styled as a “Motion to Annul Judgment, Rule to Show Cause, Expedited Hearing and Sanctions.”[2] Following a hearing, the district court on April 17, 1998, denied the motion.
On appeal, the mother asserts the district court erred in failing to annul the judgment. She challenges the judgment of October 24, 1997, on the following grounds: (1) the curator was improperly appointed; (2) the curator failed to make diligent attempts to communicate with the mother; (3 and 4) the judgment, which the mother refers to as a “default” judgment, was rendered against her without proper notice to her and without service of process; and (5) the judgment was obtained through fraud or ill practices.
Citing Imperial v. Hardy, 302 So.2d 5 (La.1974) and the current version of La.Code Civ. Proc. art. 1314 A(2), the mother first argues that, though she was absent from the state, her former counsel of record should have been served. _|jArticle 1314, however, was amended in 1997.[3] At the time the father’s rule to change custody was filed in June of 1997, the statute provided as follows:
A pleading which is required to be served, but which may not be mailed or delivered under Article 1313, shall be served by the sheriff, either on the adverse party in any manner permitted under Arti- *584 cíes 1231 through 1265, or personally on the counsel of record of the adverse party.
Clearly, then, service on the party’s counsel of record was permitted, rather than mandated, so long as service could be effected under Articles 1231 through 1265. In this ease, the father alleged the whereabouts of the mother were unknown to him.[4] The district court appointed an attorney to represent the mother pursuant to La.Code Civ. Proe. art. 5091.[5] Thereafter, service was effected upon the mother’s appointed representative under La.Code Civ. Proe. art. 1235 A, which provides that “[s]ervice is made on a person who is represented by another by appointment of court, operation of law, or mandate, through personal or domiciliary service on such representative.”
This manner of service was correspondingly sufficient under the Uniform LChild Custody Jurisdiction Act, particularly La.Rev.Stat. 13:1704. In June of 1997, the statute provided in pertinent part:[6]
A. Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be:
(1) By personal delivery outside of this state in the manner prescribed for service of process within this state; or
(2) By registered or certified mail; or
(3) If the party is a nonresident or absentee who cannot be served by the methods provided in paragraphs (1) and (2) above, either personally or through an agent for service of process, and who has made no general appearance, the court shall appoint an attorney at law to represent him.
If the court appoints an attorney at law to represent the party, all proceedings against the party shall be conducted contradictorily against the attorney at law appointed to represent him. The qualifications and duties of such attorney and his compensation shall be governed by the provisions of Articles 5092 through 5096 of the Code of Civil Procedure.
B. Notice under this Section shall be served, mailed and delivered, or last published at least ten days before any hearing in this state.
The district court in this case appointed an attorney to represent the mother, the attorney was properly served, and the rule was contradictorily heard in the presence of the mother’s appointed attorney. Accordingly, service on the mother’s duly appointed representative constituted sufficient notice to the mother under the UCCJA, in that it was “reasonably calculated to give actual notice.”
Imperial v. Hardy does not support the mother’s argument. In that case, decided before the promulgation of the UC-CJA in 1978, the Supreme Court held that the Louisiana court had “continuing jurisdiction” over the absent father because the father had previously submitted to the court’s jurisdiction in earlier [child support proceedings. The Court concluded that service could be made even five years later on the absent father’s counsel of record, provided that the matter was not final and that counsel had not moved to withdraw. The Supreme Court also observed that, if the Louisiana court has personal jurisdiction over the absent party, *585 the court alternatively has the authority to appoint an attorney to represent the absent party under La.Code Civ. Proc. art. 5091. In Chaplin v. Chaplin, 402 So.2d 795 (La.App. 4th Cir.1981), relying on Imperial v. Hardy, and Parker v. Parker, 382 So.2d 201 (La.App. 2nd Cir.1980), this court held that service of a rule on a curator ad hoc appointed to represent a nonresident defendant, when combined with the defendant’s earlier knowledge of the litigation when personal jurisdiction was initially obtained over him, meets the requirements of due process. As we noted in Martinez v. Reed, 490 So.2d 303 (La.App. 4th Cir.1986), there is no prerequisite of personal jurisdiction in a proceeding brought under the UCCJA. The UCCJA simply requires notice be given or, at the very least, a good faith attempt to notify those parties who assert custody rights. Id. at 306-07. Once the notice requirements of the UCCJA have been met, due process is satisfied.
 Here, there is no question that the district court had subject matter jurisdiction under the UCCJA. Once the subject matter jurisdiction of the Louisiana court has been established, the resulting custody decree is binding if the absent party has been given notice and opportunity to be heard as provided by La.Rev.Stat. 13:1704. Martinez v. Reed, 490 So.2d at 306 n. 1. Because the rule to change custody was served on the mother’s duly appointed representative in compliance with La.Rev.Stat. 13:1704 A, we-find that due process requirements of fair play, substantial justice and notice were adequately met.[7]
leThe mother next argues the judgment should be annulled because the appointed attorney incompletely fulfilled her obligations. The appointed representative’s duties are set forth in La.Code Civ. Proc. arts. 5094 and 5095. Although the mother’s appointed attorney placed advertisements in the classified sections of newspapers in New Orleans and Greensboro, her efforts to communicate with her client could have been more vigorous. For example, the appointed attorney made no attempt to contact the mother through the maternal grandmother, who resided in New Orleans. Also, there is no indication from the record that the appointed attorney attempted to determine a defense on behalf of her client, or to defend against the rule to change custody, 'or to appeal the adverse judgment.[8]
Nonetheless, deficiencies of the appointed representative do not render the judgment invalid. Under La.Code Civ. Proc. art. 5098, the failure of the appointed attorney “to perform any duty imposed upon him by, or the violation by any person of, the provisions of Articles 5092 through 5096 shall not affect the validity of any proceeding, trial, order, [or] judgment_” Though perhaps this article is overly harsh when applied to the instant facts, we must conclude the judgment of October 24, 1997, was not invalid as a result of any fault of the mother’s appointed representative.
Lastly, we turn to the mother’s allegations of fraud and ill practices. The district court made factual findings and credibility determinations adverse to the mother. We cannot conclude from the record that the court manifestly erred in doing so.
RFor these reasons, we affirm the ruling of the district court denying the motion to annul the judgment of October 24,1997.
AFFIRMED.
LOBRANO, J., concurs.

. Mr. Cardell Thomas initially represented the father in this appeal. Because the father's new attorney has enrolled as counsel of record, we grant Mr. Thomas’s motion to withdraw.

. The mother alleges the judgment is either an absolute nullity, because of defects patent on the face of the proceedings leading up to it, La.Code Civ. Proc. art.2002, or a relative nullity, because the judgment is founded on fraud or ill practices, La.Code Civ. Proc. art.2004. Although an absolute nullity may be attacked at any time, at any place, by rule or any other method, a relative nullity may only be challenged by means of a petition and citation, and service thereof, as in ordinary suits. See Gazebo, Inc. v. City of New Orleans, 97-2769 (La.App. 4 Cir. 3/23/98), 710 So.2d 354; O’Neill v. Summit, 481 So.2d 157 (La.App. 4th Cir. 1985); see also La.Code Civ. Proc. art. 1201. Because, as we discuss below, there are no defects that would render the judgment absolutely null or "void on its face ab initio," the mother’s action in nullity is essentially based on allegations of fraud and ill practices. Although the father apparently raised this issue in the district court, he has not advanced that argument here.

.Acts 1997, No. 268, § 1, and Acts 1997, No. 1056, § 1, effective August 15, 1997.

. We have no reason to believe this allegation was false, given the findings and credibility determinations of the district court.

. Article 5091 A provides in pertinent part:
A. The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:
(a) A nonresident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has not waived objection to jurisdiction.
There is no allegation that the district court did not have subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act, La. Rev.Stat. 13:1700 et seq. Furthermore, we find no error in the appointment of the attorney. Contrary to the assertion of the mother, the name of the attorney was handwritten on the order of appointment.

.Acts 1997, No. 578, § 2, effective August 15, 1997, substituted “not waived objection to jurisdiction” for "made no general appearance” in Section 13:1704 A(3).

. While we agree the father in this case could have effected service on the mother’s counsel of record, we note La.Code Civ. Proc. art. 1314 A(3) now prohibits service upon the counsel of record "after a final and definitive judgment terminating or disposing of all issues litigated has been rendered, the delays for appeal have lapsed, and no timely appeal has been taken.”

. The transcript of the hearing of October 24, 1997, was not made part of the record.